## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | | |
|---|---|---|
| **MORGAN GRIFFIN on Behalf of Herself and on Behalf of All Others Similarly Situated,** | § § § § | |
| **3868 McDowell Lane Halethorpe, MD 21227 (Baltimore County)** | § § § § § | |
| **Plaintiff,** | § § | |
| **V.** | § § | **CIVIL ACTION NO. : 1:24-CV-02258** |
| **CRACKER BARREL OLD COUNTRY STORE, INC.** | § § § § | **JURY TRIAL DEMANDED** |
| **Tennessee Corporation 305 Hartman Drive Lebanon, TN 37087** | § § § § | |
| **Registered Agent: The Corporation Trust, Inc. 2405 York Road, Suite 201 Lutherville Timonium, MD 21093** | § § § § § | |
| **Defendant.** | § | |

### PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT

1.     The case implicates Defendant Cracker Barrel Old Country Store, Inc.'s ("Defendant") violations of the Fair Labor Standards Act's ("FLSA") tip credit provisions and Defendant's subsequent underpayment of its employees below the minimum wage rate, as well as its violations of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Lab. & Empl. §§ 3-401 to 431 by failing to pay Plaintiff and all similarly situated workers at the minimum wage rate.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b) and as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the MWHL.

2.      Defendant pays its tipped employees, including its servers, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Maryland, the MWHL. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, both the FLSA and the MWHL set forth strict requirements for an employer to take advantage of the "tip credit." *See* 29 U.S.C. 203(m); Md. Code Ann. Lab. & Empl. § 3-419. The first among these requirements is notice: the employer must advise the employee in advance that it intends to use the tip credit. *See* 29 U.S.C. 203(m) (providing that tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."); Md. Code Ann. Lab. & Empl. § 3-419(a)(1)(ii) (similar). Under the FLSA, proper notice requires that the employer inform the employee of a minimum of the following: (1) of the amount of the cash wage that is to be paid to the tipped employee; (2) of the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice. 29 U.S.C. 203(m). Likewise, the MWHL's notice requirements are similar to those under the FLSA and provide that the employer must inform the employee about the provisions of section 3-419 of the MWHL. *See* Md. Code Ann. Lab. & Empl. § 3-419(a)(1)(ii).

4.      Further, under the FLSA and MWHL, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See* 29 U.S.C. 203(m)(2)(B); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the

pooling scheme was illegal..."); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.     Additionally, an employer must pay the minimum statutory hourly rate for all hours worked to claim the tip credit.  *See* 29 U.S.C. 203(m); Md. Code Ann. Lab. & Empl. § 3-419(c).

6.     Moreover, an employer cannot pay tipped employees below the minimum wage while requiring those tipped employees to perform non-tipped work that is unrelated to their tipped occupation. *See Barnhart v. Chesapeake Bay Seafood House Assocs.*, L.L.C., No. JFM-16-01277, 2017 U.S. Dist. LEXIS 48660, at *13 (D. Md. Mar. 31, 2017) (tipped employee's time spent performing non-tip-producing tasks unrelated to primary role is not eligible for tip credit); *see also Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7.     Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked or for a consecutive period of 30 minutes or more. *See* 29 C.F.R. 531.56(f); *Graham v. Famous Dave's of Am., Inc.*, Civil Action No. DKC 19-0486, 2020 U.S. Dist. LEXIS 174696, at *16 n.5 (D. Md. Sep. 23, 2020) (tip credit is improperly taken where tipped employee is forced to spend more than 20% of his or her time on non-tipped labor at a sub-minimum cash wage); *see also Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time"). So, too, is 30 consecutive minutes at a time. 29

C.F.R. § 531.56(f)(4); *see also Rest. Law Ctr. v. United States DOL*, 66 F.4th 593, 598 (5th Cir. 2023) ("To claim the tip credit, employers must 'ensure that tipped employees are not spending more than 20 percent of their time on directly supporting work, or more than 30 minutes continuously performing such duties.'") (quoting 86 Fed. Reg. 60,114 at 60,142) (Oct. 29, 2021).

8.     Defendant violated the FLSA and MWHL in the following respects:

    a.  **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendant failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid by Defendant; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the hourly rate paid cannot drop below the minimum tipped wage rate, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

    b.  **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain uniform items to work for Defendant, which reduced her wages below the minimum hourly wage required for tipped employees.

    c.  **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to making bread, making salads, taking out trash, doing dishes, scraping gum from underneath tables, cleaning parts of the kitchen, performing prep cook work, and performing a deep clean of the restaurant, amongst other tasks.

    d.  **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week or for a continuous period of time during a shift**: Plaintiff was required to spend greater than 20% of her time and/or more than 30 consecutive minutes performing non-tip producing side work, including, but not limited to setting up tables, refilling condiments, rolling silverware, making tea and coffee, filling ice, and setting up the soda machine, amongst other duties.

9.     As a result of these violations, Defendant has lost the ability to claim the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum

wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.    This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq.* The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12.    Plaintiff Morgan Griffin is an individual residing in Baltimore County, Maryland. Her written consent to this action is attached hereto as Exhibit "A."

13.    The FLSA Class Members are all current and former tipped employees for whom Defendant claimed the tip credit for at least one week during the three-year period prior to the filing of this action to the present.

14.    The Maryland Class Members are all current and former tipped employees for whom Defendant claimed the tip credit in Maryland for at least one week during the three-year period prior to the filing of this action to the present.

15.    The FLSA Class Members and the Maryland Class Members shall be collectively referred to as the "Class Members."

16.     Defendant Cracker Barrel Old Country Store, Inc. is a Tennessee corporation. Defendant may be served with process through its registered agent The Corporation Trust, Inc. at 2405 York Road, Suite 201, Lutherville Timonium, MD 21093.

17.     At all times relevant to this action, Defendant has had sufficient minimum contacts with the State of Maryland to confer personal jurisdiction. Defendant conducts business throughout Maryland. Furthermore, Defendant has contracted with and employed Maryland residents, has Maryland customers, markets to residents of Maryland, and owns property in Maryland. Moreover, the violation of the law and harm committed against Plaintiff occurred in Maryland.

## COVERAGE

18.     At all material times, Defendant has been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

19.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

20.     At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000. *Id.*

21.     At all material times, Plaintiff was an employee engaged in commerce or the production of goods for commerce. *Id.*

22.     At all material times, Defendant has been an employer within the meaning of the Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl. § 3-401(b).

## FACTS

23.     Defendant operates a nationwide chain of restaurants under the trade name "Cracker Barrel." In addition to Maryland, Defendant operates in Alabama, Arkansas, Arizona, Connecticut, Colorado, Delaware, Florida, Georgia, Illinois, Iowa, Louisiana, Kentucky, Maine,

Michigan, Mississippi, Nebraska, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Tennessee, Texas, and other states. (*See* https://www.crackerbarrel.com/Locations/States, last visited July 27, 2024).

24.      Cracker Barrel restaurants are full-service restaurants that employ servers to provide services to customers.

25.      A server gathers orders from customers and delivers food and drinks to the customers. A server is paid an hourly wage by Defendant and receives tips from customers.

26.      However, Defendant paid these tipped workers less than the minimum wage.

27.      Defendant attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiff and Class Members.

28.      Plaintiff worked at the Cracker Barrel in Linthicum Heights, Maryland as a server. She was paid less than the federal minimum wage of $7.25 per hour by Defendant.  Plaintiff worked for Defendant during the past three years.  She worked from approximately April 2019 to December 2021.

29.      The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited August 17, 2023).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people**

**of color.** The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id.*) (emphasis in original)

30.　　Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

31.　　In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, (4) that the hourly wage paid to the Plaintiff and Class Members could not be lower than the minimum tipped wage, (5) that they cannot pay for any work related expenses, and (6) that the tip credit shall not apply to any employee who does not receive the notice, amongst other violations.

32.　　Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

33.　　These duties include but are not limited to the following: making bread, making salads, taking out trash, doing dishes, scraping gum from underneath tables, cleaning parts of the kitchen, performing prep cook work, and performing a deep clean of the restaurant, amongst other activities that were not related to their tipped occupation.

34.     Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent and/or for consecutive periods of time of more than 30 minutes, performing non-tip producing side work related to the employees' tipped occupation.

35.     Specifically, Defendant maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to setting up tables, refilling condiments, rolling silverware, making tea and coffee, filling ice, and setting up the soda machine, amongst other non-tip producing duties.

36.     Further, Defendant required Plaintiff and the Class Members to perform non-tip producing work prior to the opening of the restaurant, in the middles of their shifts, and after the restaurants closed.  Indeed, Defendant required the Plaintiff and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendant required the Plaintiff and Class Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 31 minutes to two hours performing non-tip producing work before the restaurant was open, in the middle of their shifts, and after the restaurant was closed.

37.     However, Defendant did not pay its tipped employees the full minimum wage rate for this work. The duties that Defendant required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

38.     During Plaintiff' and the Class Members' employment, checklists were posted in Defendant's restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

39.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

40.     Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

41.     Defendant did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendant were capable of doing so.  Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff or the Class Members.

42.     Defendant uses a point-of-sale system to record hours worked by its tipped employees.  Defendant then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff and the Class Members.

43.     In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

44.     However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

45.     Defendant's managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

46.     Moreover, Defendant violated the FLSA by not even paying the minimum "tipped" hourly rate.  Defendant required its tipped employees to pay for items for their uniform, including pants, shirts, belts, and shoes.  These clothing items were required to perform work for Defendant and were primarily for the benefit and convenience of Defendant. The costs for these items were not reimbursed by Defendant.

47.     Because Defendant paid its tipped employees below the minimum wage rate, any week in which a tipped employee was required to pay for work related expenses for Defendant's business, his/her compensation fell below the applicable tipped wage rate, thereby negating Defendant's entitlement to claim the tip credit.

48.      In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced.  As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

49.     Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward its minimum wage obligation to Plaintiff and the Class Members.

50.     As such, Plaintiff and the Class Members were not compensated at the federally mandated minimum wage.

51.     Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding its tipped employees as described in this Complaint.

Defendant's method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that its conduct complied with the law.

## DUAL JOBS REGULATION

52.    On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a new standard for interpreting the dual jobs regulation that was different than the "80/20" rule and prior Department of Labor opinion letters and guidance that had existed for the past approximately 30 years.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference given the sudden an unexpected change by the Department of Labor.  *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

53.    Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

54.    After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa). After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a

tipped    employee    can    perform    when    an    employer    is    taking    a    tip    credit."
(https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

55.     After soliciting more comments, the Department of Labor announced on October 28,    2021,    the    publication    of    a    final    rule    (Tips    Dual    Jobs    final    rule). (https://www.dol.gov/agencies/whd/flsa/tips).

56.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.  This regulation provides additional guidance relating to the existing rule that a worker cannot perform non-tip generating work for excessive periods of time.

57.     Here, Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time.  That is because Defendant required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, and after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips.  During this time, Defendant paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

58.     Given that Defendant failed to comply with the requirements to take the tip credit, Defendant have lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

59.    Even prior to the new dual jobs regulation being implemented in December 2021, the 80/20 Rule had been in place for 35 years.  Indeed, the 80/20 Rule has been enforced by the Department of Labor's Wage and Hour Division since at least 1988 when it was first articulated in the Field Operations Handbook as a protocol for enforcing the dual jobs regulation (29 C.F.R. § 531.56) with respect to tipped employees, and it has withstood every attempt at being curtailed ever since. *See, e.g., Rafferty v. Denny's, Inc.*, 13 F. 4th 1166 (2021); *see also Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019)

60.    Moreover, the plain text of the FLSA states that a "[t]ipped employee" is "any employee <u>engaged in an occupation</u> in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t) (emphasis added).  The legislative history of the 1974 amendments to the FLSA (page 43 of Senate Report No. 93-960, February 22, 1974), explains that the work of janitors and dishwashers is not tipped work and not eligible for the tip credit.  That was precisely the type of work that Defendant assigned to Plaintiff and the Class Members.

61.    Moreover, the Department of Labor was given express authority from Congress to interpret the FLSA and the Department of Labor has always taken the position that the tip credit cannot be claimed when a tipped employee spends a substantial amount of time performing general preparation work or maintenance work. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA–854 (Dec. 20, 1985) (stating "where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial amount of time in performing general preparation work or maintenance, we would not approve a tip credit

for hours spent in such activities.") This opinion is consistent with the legislative history of the FLSA and every circuit court that has considered the FLSA-854 opinion from the DOL has held that it constitutes a proper statement of the law under the FLSA. *See, e.g., Marsh v. J. Alexander's LLC*, 905 F.3d 610 (9th Cir. 2018).

## COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiff brings this action as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former tipped employees for whom Defendant claimed the tip credit for at least one week during the three-year period prior to the filing of this action to the present.

63.     Plaintiff has actual knowledge through conversations with her co-workers, that a class of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

64.     The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

65.     Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions, were subject to the same expense practices, and performed substantial work that was unrelated to their tip producing duties.

66.     Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

67.     The names and address of the FLSA Class Members are available from Defendant's records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

68.    Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

69.    As such, the class of similarly situated FLSA Class Members is properly defined as follows:

> **All current and former tipped employees for whom Defendant claimed the tip credit for at least one week during the three-year period prior to the filing of this action to the present.**

## MARYLAND CLASS ALLEGATIONS

70.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Maryland Class Members which is comprised of the following:

> **All current and former tipped employees in Maryland for whom Defendant claimed the tip credit for at least one week during the three-year period prior to the filing of this action to the present.**

71.    <u>Numerosity</u>. The number of members in the Maryland Class is believed to be well in excess of 1,000. This volume makes bringing the claims of each individual member of the Maryland Class before this Court impracticable. Likewise, joining each individual member of the Maryland Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Maryland Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Maryland Class and Defendants.

72.    <u>Typicality</u>. Plaintiff's claims are typical of the Maryland Class because like the members of the Maryland Class, Plaintiff was subject to Defendant's uniform policies and

practices and was compensated in the same manner as others in the Maryland Class. Plaintiff and the Maryland Class have been uncompensated and/or under-compensated as a result of Defendant's common policies and practices which failed to comply with Maryland law. As such, Plaintiff's claims are typical of the claims of the Maryland Class. Plaintiff and all members of the Maryland Class sustained damages arising out of and caused by Defendant's course of conduct in violation of law as alleged herein.

73.    <u>Adequacy</u>. Plaintiff is a representative party who will fairly and adequately protect the interests of the Maryland Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Maryland law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Maryland Class she seeks to represent.

74.    <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

      a.  Whether Defendant properly informed Plaintiff and the Maryland Class Members of the intent to claim the tip credit;

      b.  Whether Plaintiff and the Maryland Class Members spent more than 20 percent of their workweek performing non-tip generating related side work;

      c.  Whether Plaintiff and the Maryland Class Members spent more than 30 consecutive minutes at a time performing non-tip generating related side work; and

      d.  Whether Plaintiff and the Maryland Class Members were subject to unlawful deductions, including for uniform items and for walk-out customers.

75.    The common issues of law include, but are not limited to:

    a.   Whether Defendant can claim the "tip credit";

    b.   Whether Defendant violated the Maryland Wage and Hour Law;

    c.   Whether Plaintiff and the Maryland Class are entitled to compensatory damages; and

    d.   The proper measure of damages sustained by Plaintiff and the Maryland Class Members.

76.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Maryland Class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the Maryland Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

77.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Maryland Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Notice of the pendency and any resolution of this action can be provided to the Maryland Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication.  The identity of members of the Maryland Class is readily identifiable from Defendant's records.

78.     This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; and (2) the burden is on Defendant to prove it properly compensated its employees including any potential exemptions that might apply. Ultimately, a class action is a superior form to resolve the Maryland claims detailed herein because of the common nucleus of operative facts centered on Defendant's continued failure to pay Plaintiff and the Maryland Class Members per applicable Maryland laws.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### FAILURE TO PAY THE MINIMUM WAGE

79.     Plaintiff incorporates the preceding paragraphs by reference.

80.     This count arises from Defendant's violation of the FLSA in connection with its failure to pay the minimum wages. *See* 29 U.S.C. § 206.

81.     Plaintiff and the FLSA Class Members were paid hourly rates below the minimum wage while working for Defendant.

82.     Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

83.     Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the federal minimum wage rate.

84.     Defendant's failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that its conduct did not violate the FLSA. 29 U.S.C. § 255(a).

COUNT II
VIOLATION OF THE MARYLAND WAGE AND HOUR LAW
FAILURE TO PAY THE MINIMUM WAGE

85.     Plaintiff incorporates the preceding paragraphs by reference.

86.     This count arises from Defendant's violation of the MWHL failure to pay minimum wages to Plaintiff and the Maryland Class Members.

87.     During their employment with Defendant, Plaintiff and the Maryland Class Members were not exempt from the minimum wage provisions of the MWHL.

88.     Defendant paid Plaintiff and the Maryland Class Members below the minimum wage rate in Maryland, in violation of Md. Code Ann. Lab & Empl. § 3-419(C).

**WAGE DAMAGES SOUGHT**

89.     Plaintiff and the FLSA Class Members are entitled to receive the difference between the federal minimum wage and the tip credit adjusted minimum wage for each hour they worked.

90.     Plaintiff and the Maryland Class Members are entitled to receive the difference between the Maryland minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

91.     Plaintiff and the Class Members are entitled to reimbursement for all work-related expenses they paid or that were taken from their tips.

92.     Plaintiff and the Class Members are entitled to liquidated damages.

93.     Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs, as required by the FLSA and Maryland law.

## JURY DEMAND

94.    Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend

VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

95.    For these reasons, Plaintiff respectfully requests that judgment be entered in her favor

awarding her and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

d.  Reasonable attorney's fees, costs, and expenses of this action;

e.  Pre and post judgment interest; and

f.  Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

By:  /s/ *Don Foty*
Don J. Foty
District of Maryland Bar No. 22081
Hodges & Foty, LLP
dfoty@hftrialfirm.com
2 Greenway Plaza, Ste 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

Attorney for Plaintiff and Class Members